### EX PARTE IKE ALDERETE.

#### No. 4978.   Decided April 10, 1918.

#### Rehearing denied May 8, 1918.

**1.—Habeas Corpus—Jurisdiction—Rule Stated.**

The Court of Criminal Appeals has jurisdiction to issue a writ of habeas corpus in any case where a person is illegally restrained of his liberty. Distinguishing Ex parte Zuccaro, 72 Texas Crim. Rep., 214, Ex parte Mussett, 72 Texas Crim. Rep., 487. The Supreme Court has concurrent jurisdiction of habeas corpus proceedings growing out of civil cases, and generally the Court of Criminal Appeals will refrain from issuing writs of habeas corpus in such cases, but in the instant case on account of the condition of the records, this court will entertain jurisdiction.

**2.—Same—Injunction—Corporation—Practice.**

Where the injunction which relator was alleged to have violated related to the business in which he and the corporation, of which he was an officer, was engaged, its effect could not be avoided by a removal to another town in the same county, and he could be fined for contempt for a violation of such injunction.

**3.—Same—Commitment—Contempt—Injunction.**

It is necessary that a writ of commitment for contempt should be issued before relator can be arrested, and the lower court can not issue such commitment while the case was pending on appeal in this court. Following Ex parte Kearby and Hawkins, 35 Texas Crim. Rep., 531 and other cases. And where there was no judgment entered in the lower court at the time of his arrest authorizing the detention of the relator he must be discharged. However, the subsequent enforcement of the judgment of the District Court may be done by proper process.

From El Paso County.

Original habeas corpus proceedings asking release from a fine of contempt of one hundred dollars and three days in the county jail for violating an injunction of the District Court of El Paso County in a civil proceeding.

The opinion states the case.

*M. W. Stanton, Hudspeth & Harper,* and *Martin & McDonald,* for relator.—Cited cases in opinion.

*E. B. Hendricks,* Assistant Attorney General, for the State.

MORROW, JUDGE.—This is an original application for writ of habeas corpus seeking relief against judgment of the District Court in El Paso County declaring relator in contempt of court.

The State suggests the want of jurisdiction of this court, citing Ex parte Zuccaro, 72 Texas Crim. Rep., 214, and Ex parte Mussett, 72 Texas Crim. Rep., 487. One of these cases, Ex parte Zuccaro, supra, indicates that the majority of the court rendering the opinion were of opinion that by reason of article 1529 of the Revised Civil Statutes that this court would be without jurisdiction to grant a writ of habeas corpus to one restrained of his liberty by virtue of an order entered in a civil case. The Mussett case follows the same line of reasoning, stating: "To our mind, taking into consideration our Constitution, and the amendment thereto, the Act of the Legislature, in pursuance of this amendment to the Constitution quoted above, it was the clear intent and purpose that in this character of case the application for a writ of habeas corpus should be addressed to the Supreme Court, and not to this court." In State ex rel. McNamara v. Clark, 79 Texas Crim. Rep., 559, the majority of the court rendering the opinion held it is vested with the jurisdiction to give relief against an injunction ordered issued by a district court. This decision, it is claimed in the dissenting opinion, is in conflict with the cases of Zuccaro and Mussett, supra.

Whatever may be the scope or effect of the decisions mentioned, the writer is of the opinion that the Court of Criminal Appeals has jurisdiction to issue a writ of habeas corpus in any case where a person is illegally restrained of his liberty. See arts. 69 and 160, C. C. P. Article 174 prescribes the requisites of a petition for a writ of habeas corpus, and article 175 is as follows: "The writ of habeas corpus shall be granted without delay by the judge or court receiving the petition, unless it be manifest by the statements of the petition itself, or some documents annexed to it, that the party is entitled to no relief whatever." See arts 181 to 183, C. C. P., also. The Constitution contains the following: "The Court of Criminal Appeals and the judges thereof shall have the power to issue the writ of habeas corpus, and under such regulations as may be prescribed by law, issue such writs as may be necessary to enforce its own jurisdiction." (Art. 5, sec. 5.)

The Supreme Court also has power to issue writs of habeas corpus in certain cases. Article 5, section 3, of the Constitution provides: "The Supreme Court and the justices thereof shall have power to issue writs of habeas corpus, as may be prescribed by law." And the Act of 1905, page 20, Revised Civil Statutes, 1911, article 1529, provides, in substance, that the Supreme Court or any justice thereof shall have power to issue writs of habeas corpus where a person is restrained of his liberty by virtue of any order of a court or judge issued in a civil cause. The effect of these constitutional and statutory provisions, as the writer understands them, is that the Court of Criminal Appeals is vested with authority to issue writs of habeas corpus in all cases where a person is illegally restrained of his liberty, and that the Act of the Legislature vesting in the Supreme Court authority to issue such writs where restraint grows out of a civil case, gives the Supreme Court concurrent jurisdiction with the Court of Criminal Appeals in such cases. This,

we understand, is the construction placed upon the statute by the Supreme Court, at least such is the intimation in Ex parte Allison, 99. Supreme Court Reports, 464.   It is also in harmony with the conclusion reached by this court in Ex parte Allison, 48 Texas Crim. Rep., 634. It does not follow that the Court of Criminal Appeals will exercise its jurisdiction by granting a writ in every application for writ of habeas corpus.   The contrary policy has been declared and made necessary; and generally speaking, it will not issue original writs of habeas corpus. in cases where other courts have jurisdiction to do so.   Ex parte McKay, 82 Texas Crim. Rep., 221, and cases cited.   This is because primarily the functions of the Court of Criminal Appeals are appellate and it is much more expedient that habeas corpus questions be determined by the District Courts where they have jurisdiction subject to review on appeal to this court.   Upon the same principle, this court will refrain from issuing writs of habeas corpus against restraint under orders in a civil case because it is more orderly and expedient that the Supreme Court should pass upon such habeas corpus proceedings as are placed within its jurisdiction by the statute mentioned above.   So in a contempt proceeding where it appears that it grows out of an alleged failure to observe an order in a civil cause this court will refuse to grant the writ relegating the party to his remedy in the Supreme Court.

This procedure would have been followed in the instant case except for the fact that when the application was presented it did not contain a copy of the order or process under which the relator was held, but stated that it could not be obtained.   This was in accord with article. 174, C. C. P., which prescribes the requisites of a petition for a writ of habeas corpus.   Since the record has been brought here it is apparent that it does grow out of an order in a civil cause and it ought to have been presented to the Supreme Court, but the writ having been issued under the circumstances mentioned it appears to be the duty of this court to decide the question raised.

The facts show that the relator is an officer in a corporation known as La Union Fraternal, domiciled in El Paso County, Texas; that it formerly operated at the town of Ysleta in that county, but at the time the transaction involved in this proceeding occurred it was operating in the City of El Paso in the same county.   On the 20th day of July, 1916, a suit was filed against it and against relator, who was one of its officers, which suit was prosecuted to judgment, from which we take the following excerpt: "It is, therefore, ordered, adjudged and decreed that the writ of injunction as prayed for in plaintiff's original petition filed herein the 20th day of July, A. D. 1916, be granted, and that the defendant, La Union Fraternal, a corporation, and its officers, agents, servants and employes, and Ike Alderete, be and are hereby perpetually enjoined and restrained from using the premises of said club, or any part thereof, for the purpose of selling spirituous, vinous and malt liquors, or either of them, and from keeping for sale therein spirituous, vinous or malt liquors, and from using the stock, means, assets and prop-

erty of the said La Union Fraternal, a corporation, for purchasing, selling and dispensing intoxicating liquors to its members and other persons."

Appeal was prosecuted from this judgment to the Court of Civil Appeals and the matter has been finally determined against relator and the order disposing of it is not one from which a writ of error to the Supreme Court would lie.

The relator was cited and appeared in a contempt proceeding in the court which rendered the judgment mentioned, and the hearing and order was issued adjudging him in contempt of said court from which order we copy as follows: "Finding that it having been proven that said Ike Alderete disobeyed the said injunction and final judgment on March 1, 1918, in this, that he sold and kept for sale intoxicating liquors at the premises of La Union Fraternal, a corporation, in El Paso, El Paso County, Texas, and that he, on said date, used the stock, means and assets of said corporation for the purpose of selling and keeping for sale and dispensing intoxicating liquors to the members of said corporation; and further, that said Ike Alderete was an officer, towit, treasurer of said corporation, on said date." The order further fixed the punishment of relator at a fine of $100 and imprisonment in the county jail for three days.

The agreed statement of facts sustains the finding. It is obvious that the injunction related to the business or occupation in which the relator and the corporation of which he was an officer was engaged and that its effect was not to be avoided by the removal to another town in the same county any more than transferring its business to another house in the same town would have done so.

To hold one adjudged in contempt in custody a valid and entered order or judgment and a commitment issued thereon are necessary. The record discloses that on March 9th the court trying relator for contempt stated that an order adjudging him guilty and fixing his punishment would be made, and that thereafter on the same day after the sheriff had taken charge of relator this order was entered on the docket and was subsequently on the 11th of March merged in the judgment and spread upon the minutes. This judgment has been quoted from and bears date of March 9th. This writ of habeas corpus was applied for and issued on March 20th. The sheriff in his return states that the relator was taken into custody by virtue of an oral order of the district judge of the Thirty-fourth Judicial District made in a proceeding on the docket of that court March 9, 1916, adjudging relator in contempt; that no commitment was delivered to him until the 19th day of March, at which time there was delivered to him the commitment which was attached to his return and which is formal and appears based on the judgment entered in the minutes of the court, above referred to. In the absence of a commitment relator was illegally restrained. Ex parte Kearby and Hawkins, 35 Texas Crim. Rep., 531; Ex parte Kearby, 35 Texas Crim. Rep., 634; Goodfellow v. State, 53

Texas Crim. Rep., 471; Ex parte Duncan, 42 Texas Crim. Rep., 661; Ex parte West, 60 Texas Crim. Rep., 485; Ex parte Davis, 38 Texas Crim. Rep., 646; Ex parte Andrews, 51 Texas Crim. Rep., 79; Ex parte Kilgore, 3 Texas Crim. App., 247; Ex parte Coffee, 72 Texas Crim. Rep., 209, 161 S. W. Rep., 975; Ex parte Dena, 62 Texas Crim. Rep., 379; Ex parte Ogden, 63 Texas Crim. Rep., 380.

Where one is held in contempt proceedings on a verbal order and obtains from this court a writ of habeas corpus, the court making the order is without power to correct it or to oust the jurisdiction of this court which attaches by issuance of the writ by causing a commitment to be issued. This is held in Kearby v. State, supra, and other cases, and is based upon article 211, C. C. P.

The facts of this case, however, are not such. At the time the writ of habeas corpus was issued by this court the sheriff had in his possession the commitment issued on the previous day, which commitment he attaches to his return in compliance with 190, C. C. P. We understand the cases cited above, notably the case of Kearby, to justify the inference that the right of the court making the order to amend the process issued thereunder exists prior to the time that the writ of habeas corpus was issued. This view appears to be supported by the statute, art. 205, C. C. P. In all events, it occurs to us that inasmuch as the return of the sheriff of El Paso County, to whom the writ of habeas corpus was issued, shows that at the time the writ was issued he was holding relator under a commitment previously issued, supported by a valid judgment, that we would not be authorized to discharge the relator on account of the fact that before the commitment was issued the relator had been by the sheriff illegally restrained of his liberty. It would seem that the question for us to decide is whether at the time the writ applied for was issued there was any illegal restraint.

Acting upon this view we must order the relator remanded.

*Relator remanded to custody.*

PRENDERGAST, JUDGE, absent.

ON REHEARING.

May 8, 1918.

MORROW, JUDGE.—No writ of habeas corpus was ever issued herein. An application for such a writ was filed and the order made by the presiding judge releasing relator on bail pending a decision by the court whether a writ would be issued or not. The writ was refused upon the mistaken ground that the order for discharge on bail was made after the commitment was in the hands of the sheriff. This fact was gathered from the pencil memorandum granting the order written on the application. The order was in fact made at a time when the sheriff had no commitment for the relator in his hands, and was holding him under a verbal order of the trial judge, for which reason we were in error in

refusing the writ, which error we now correct by setting aside the order refusing it and granting the writ of habeas corpus.

The judgment was rendered March 9th and a memorandum made of it. It purports, as written, to have been rendered March 9th, though it appears aliunde that it was not physically transcribed on the minutes until the 11th of March. We do not understand that there was any question of the entry of the judgment nunc pro tunc involved. We are of opinion that the order made by this court did not suspend the power of the trial court to have written on its minutes the judgment it had rendered. The order was an obstacle to any interference with the liberty of the relator by virtue of the judgment, or any process issued thereunder pending the disposition of the matter in this court, and if this court on the hearing had determined that the facts did not authorize the rendition of the judgment, the relator could not be held upon any subsequent process issued thereon. This court having determined that the facts did authorize the rendition of the judgment, and it having been entered in the record, and the discharge of relator being upon the ground that at the time the order of this court was made there was no judgment entered or process issued authorizing his detention, its present order discharging him is no impediment to the subsequent enforcement of the judgment of the District Court by proper process.

The application for writ of habeas corpus is granted and the relator is ordered discharged.

*Relator discharged.*