## Ex Parte William M. McCraw

No. 9899.　Delivered November 18, 1925.

**1.—Habeas Corpus—Contempt of Court—Power to Punish—Procedure.**

While the District Court by statute is given the power to punish for contempt by imprisonment not exceeding three days, Art. 1911, Statutes

of 1925, the statutes are silent touching the procedure to be pursued, and reference must be had to the Common Law, and such modifications thereto as are found in the precedents available. See Ex Parte Green, 46 Tex. Crim. Rep. 577.

**2.—Same—Continued.**

These precedents are generally to the point that "to justify the imprisonment of a party adjudged to be in contempt, an order or warrant of commitment of some sort is necessary." Concerning the form and substance of the order the courts of various jurisdiction are not in complete accord. See Rapalje on Contempt, Sec. 129; Ex Parte Buford, 1 Cranch 456; Ruling Case Law Vol. 6 Note in Hoffman v. Hoffman, Amer. & Eng. Ann. Cases 1913A, page 957.

**3.—Same—Contempt of Court—Verbal Order—Not Sufficient.**

In this State, however, it has been uniformly held that the imprisonment of one for contempt will not be tolerated on a verbal order of the court. Ex Parte Kearby v. State. Upon an application to this court for an original writ of habeas corpus in a contempt proceeding, the incarceration to be sustained, must be supported by a written order in which the conduct or facts upon which the contempt is founded are set forth, to enable us to determine on the facts whether there was jurisdiction to adjudge the relator in contempt.

**4.—Same—Commitment—Supported by Written Judgment—Held Sufficient.**

The commitment in the present case was issued upon a judgment of the court which had been reduced to writing, and signed by the judge, and delivered to the clerk of the court, though not entered in the minutes. This commitment was not rendered void by the issuance of the writ of habeas corpus before the judgment had been spread upon the minutes of the court. Following Latham v. State, 47 Tex. Crim. Rep. 208.

**5.—Same—Transcribing Judgment—Habeas Corpus—Does Not Annul.**

Where a written judgment for contempt is signed and deposited by the judge with the clerk of the court, to be transcribed, the granting of a writ of habeas corpus before the judgment has actually been spread upon the minutes of the court does not annul the right and duty of the clerk to transcribe the judgment in the minutes of the court. Following Ex Parte Alderete, 83 Tex. Crim. Rep. 358.

**6.—Same—Commitment in Contempt—Judgment Not Transcribed—Effect of.**

We therefore are of the opinion that a written judgment of the court having been delivered to the clerk by the judge, a valid commitment could be issued on such order, before same had been actually transcribed by the clerk in the minutes of the court, and relator is not entitled to his discharge, and he is therefore remanded to the custody of the sheriff.

Original habeas corpus seeking release from a judgment for contempt in the Criminal District Court of Dallas County.

Aplication is refused, and relator is remanded to the custody of the sheriff.

The opinion states the case.

*Grover Adams,* for relator.

*Phillips, Townsend & Phillips* and *Allen, Calloway & Allen,* for respondent.

### OPINION.

This is an original habeas corpus proceeding in which relator seeks release from custody under a judgment for contempt.

On the 30th day of October, at about 5:00 o'clock p. m., relator, an attorney at law, was, in open court by verbal announcement from the bench by the trial judge, adjudged guilty of contempt of court because of certain remarks made in the presence and hearing of the court while in session. After making the verbal announcement, the court at once prepared in writing the judgment reciting the facts constituting the contempt and the punishment. This judgment was signed by the judge in his official capacity, delivered to the clerk of the court, filed by him and placed in the records of the court, and on the following morning, at about 10:00 o'clock, was transcribed by him upon the minute-book of the court. Upon receipt of the judgment prepared and signed, the clerk issued a commitment for the relator, directed to the sheriff. The relator was not taken in custody at once, but on the following morning, at 8:00 o'clock, he surrendered himself to the sheriff and was by him held in custody. At about 9:00 o'clock, on the morning of the 31st day of October, a writ of habeas corpus was issued by the presiding judge of this court. At what time the commitment came into the hands of the sheriff is not revealed, but in his return filed in this court, the statement is made that the relator was held by virtue of the commitment mentioned and the judgment described. Certified copies of both the commitment and judgment are attached to the sheriff's return, the latter showing it to be of record in the minutes of the court.

Upon this hearing the facts are not in dispute. It is not contended that the conduct of the relator did not warrant the judgment, but the sole question presented grows out of the procedure. Relator contends that his detention is illegal because at the time he was taken in custody the order adjudging him guilty of contempt had not been spread upon the minutes of the court by the clerk and that its record in the minutes after the issuance of the writ of habeas corpus did not validate the detention. The respondent contends that before the relator was taken in custody, he had been adjudged guilty of contempt in open court, the amount of punishment fixed, and a formal order

of the court reduced to writing, signed by the judge in his official capacity, delivered to the clerk and filed by him as a record of the court; that the commitment issued thereon is a valid warrant for the detention of the relator, although at the time of the issuance of the commitment and at the time the relator was taken in custody the clerk had not copied in the minutes of the court the aforesaid order written and signed by the judge and filed by the clerk.

The District Court, by Statute, is given the power to punish for contempt by imprisonment not exceeding three days. Art. 1708, Vernon's Tex. Crim. Statutes, 1920; Art. 1911, Statutes of 1925.

Touching the procedure to be pursued the Statutes are silent and reference must be had to the Common Law and such modifications thereto as are found in the precedents available. Ex parte Green, 46 Texas Crim. Rep. 577. These precedents are general to the point that "to justify the imprisonment of a party adjudged to be in contempt, an order, or warrant of commitment of some sort, is necessary." Rapalje on Contempt, Sec. 129; Ex parte Buford, 1 Cranch, 456; Ruling Case Law, Vol. 6, p. 536, Sec. 49. Concerning the form and substance of the order, the courts of various jurisdiction are not in complete accord. See note in Hoffman v. Hoffman, Amer. & Eng. Ann. Cas., 1913A, p. 957; also Ruling Case Law, Vol. 6, p. 537. In this State, however, it has been uniformly held that the imprisonment of one for contempt will not be tolerated on a verbal order of the judge. See Ex parte Kearby, 35 Texas Crim. Rep. 531 and 635; Ex parte Andrews, 51 Texas Crim. Rep. 80; Ex parte Alderete, 83 Texas Crim. Rep. 358. In the opinion of the writer, the practice may be regarded as settled in this State that upon an application to this court for an original writ of habeas corpus in a contempt proceeding, the incarceration, to be sustained, must be supported by a written order in which the conduct or facts upon which the contempt is founded are set forth to the end that this court may determine whether, on the facts, there was jurisdiction to adjudge the relator in contempt. In the various cases in which this court has held a verbal order insufficient, the declaration is made that the detention must be supported by an "order entered."

"The entry of a judgment is a ministerial act, which consists in spreading upon the record a statement of the final conclusion reached by the court in the matter, thus furnishing external and incontestable evidence of the sentence given,

and designed to stand as a perpetual memorial of its action."
(Words & Phrases, Vol. 3, p. 2403.)

In Kearby's case, supra, as in the others where the declaration is found that the detention is invalid in the absence of judgment *"entered"*, the relator was taken in custody upon a *verbal order*. The holding has been that custody taken under a verbal order could not, after the writ of habeas corpus was issued, be validated by a subsequent written order, and with this we find ourselves in accord. Obviously; however, in the cases in which it has held that a *verbal order would not suffice*, the court was not called upon to decide that the written order would not support the commitment until after it was entered upon the minutes of the court. The commitment in the present case was issued upon a judgment of the court which had been reduced to writing, and signed by the judge, though not entered in the minutes. Was this commitment rendered void by the issuance of the writ of habeas corpus before the judgment had been spread upon the minutes? In Latham's case, 47 Texas Crim. Rep. 208, a similar state of facts were involved. In that case the judgment of the court was reduced to writing, the commitment issued at once and the relator taken in custody. Two days later the judgment was spread upon the minutes of the court. Subsequent thereto, a writ of habeas corpus was issued. It was held by this court on the hearing that the commitment issued under the circumstances was sufficient warrant for refusing to discharge the relator. From the opinion we quote:

"Relator contends that under Ex parte Kearby, 35 Texas, 634, he could not be imprisoned until a proper judgment was entered and the writ issued. In that case no writ was issued, and no judgment entered, until after the writ of habeas corpus had been sued out and granted. Not so here. The judgment was actually deposited with the clerk at the very time the writ was issued, and should have been entered then, although it was not entered until two days thereafter. * * * The writ of habeas corpus was not granted until September 28th, when all the record proceedings in said divorce suit had been entered."

The granting of the writ of habeas corpus did not annul the right and duty of the district clerk to transcribe the judgment of the minutes of the court. Ex parte Alderete, supra. Therefore, if the relator should be held to be entitled to his release, the relief would be temporary, for the reason that the record now being perfected by the spreading

of the previously written and signed order upon the minutes, a new commitment under which relator could be taken in custody and held to satisfy the judgment could be issued thereon.

In this, as in the Latham case, supra, the commitment and custody were antecedent to the transcription of the judgment in the minute-book. The reasoning upon which the custody of Latham was held legal seems with equal force to operate in the present instance. The sole distinguishing fact is that in this case the writ of habeas corpus was issued an hour before the judgment was transcribed in the minutes, while in that case the writ of habeas corpus was subsequent. In each case, however, the legality of the custody relates back to the validity of the commitment. If valid in one, it would necessarily be valid in both. It is to be noted that the relator was not arrested on the commitment but after it was issued, and that before the judgment was placed in the minute-book, relator voluntarily surrendered to the sheriff.

While the question presented is not without difficulty, we are constrained to the view that under the precedents, particularly the Latham case, supra, the relator is not entitled to his discharge, and he is therefore remanded to the custody of the sheriff.

*Relator remanded.*